## Milk Marketing Board of the Commonwealth of Pennsylvania v. Crivellaro & Sons

*Charles M. Guthrie,* Assistant Attorney General, and *William C. Sennett,* Attorney General, for Milk Marketing Board.

*Michael Franciosa,* for defendants.

LIPSITT, J., January 14, 1970.—The Milk Marketing Board of the Commonwealth of Pennsylvania (hereinafter called the "board") has filed a complaint in equity requesting this court to enjoin defendants, Charles, Sr., Anthony, Salvatore and Louisa Crivellaro, trading as Crivellaro and Sons (hereinafter called "Crivellaro") from buying milk as handlers and manufacturers without having been duly licensed by the board, and from buying milk from producers without having been duly licensed by the board, and without having filed with the board an acceptable bond in a lawful and sufficient amount to protect the producers. No answer has been made to the complaint.

The request for a preliminary injunction was heard on November 5, 1969. At the hearing, the evidence was received through stipulations entered into between the counsel for the board and counsel for defendants, and it was agreed that the chancellor dispose of the litigation as on a final hearing. Actually, there are no contested facts. A brief reference to the factual situation as disclosed in the complaint and through the stipulations will suffice as background for an understanding of the legal issue.

Crivellaro is a partnership engaged in a cheese manufacturing business located in Northampton County, Pa., which purchases milk from the United Milk Producers Cooperative Association of New Jersey (hereinafter called "United"), a New Jersey organization. The milk received is produced by Pennsylvania producers who are members of the New Jersey cooperative and shipped directly to the Crivellaro plant. All of the milk purchased is manufactured into cheese and is not resold in a fluid milk state. For the three

license years commencing May 1 in 1967, 1968 and 1969, Crivellaro has not submitted an application for a license under the provisions of section 401 of the Act of April 28, 1937, P. L. 417, as amended, 31 PS §700j-401 known as the "Milk Control Law."[1] Nor has Crivellaro filed a bond for the protection of milk producers under section 501 of the said act, 31 PS §700j-501.

The board claims Crivellaro is subject to the licensing and bonding requirements of the aforementioned statutory sections, and Crivellaro argues that a proper interpretation of the statute does not include its operation within the legislative provisions.

To determine the legal problem, an examination must be made of the language in the pertinent legislation. Section 401 of the Milk Control Law provides:

"Except as herein otherwise specifically provided, a milk dealer or handler, as defined in this act, shall not buy or handle milk, whether as a broker, factor, bailee, consignee, or otherwise, and whether or not by contract or operation of law title passes to the handler, from producers or others within this Commonwealth for storage, consignment, brokerage, *manufacture, processing, distribution,* or sale within or without this Commonwealth, or *manufacture, process,* handle, *sell* or distribute milk within this Commonwealth, unless such dealer or handler be duly licensed as herein provided; . . ." (Italics supplied.)

In section 103 of the Milk Control Law, 31 PS §700j-103, under the definition of "milk dealer or handler," it is stated that these terms mean:

". . . any person including any store or subdealer

---

[1] The present defendants or their predecessors were licensed as a manufacturer from May 1939 through April 30, 1967. This controversy is likely due to the difference in fee between a manufacturer's license (a form of dealer's license) which is a fixed amount and that of a handler which is based on a sliding scale depending upon milk poundage.

or subhandler, as hereinafter defined, who purchases or receives or handles on consignment or otherwise milk within the Commonwealth, for sale, shipment, storage, *processing* or *manufacture,* within or without the Commonwealth, whether on behalf of himself or others, or both." (Italics supplied.)

It is clear that Crivellaro, which purchases milk for manufacture, falls within the definition of "milk dealer or handler." Crivellaro's only argument[2] appears to be that United, being a New Jersey cooperative, must be regarded as an out-of-State milk handler and not a producer under the definitions in section 103 of the Milk Control Law and thus reverting to section 401, supra, title does not pass to it from a producer.

Section 103, 31 PS §700j-103, provides, in part:

" 'Cooperative' means a cooperative agricultural association or corporation of producers organized under the laws of this Commonwealth or of any other state and engaged in making collective sales or in the marketing of milk for producers under contract with it. A cooperative shall not be deemed a milk dealer or handler, but shall be deemed a producer, except as otherwise provided herein."

In explanation of the phrase "except as otherwise provided herein," this section then continues, inter alia:

". . . If a cooperative distributes or makes available on consignment or otherwise milk within this Commonwealth to stores, as defined in this act, or to consumers, as defined in this act, or to other milk dealers or handlers, as defined in this act, or acts as an agent for its members, it shall be deemed to be a milk dealer or handler as to that part of its business, and shall be governed by the provisions of this act applicable thereto."

---

[2] No brief or legal memorandum setting forth the reasons for Crivellaro's position has been filed. The assumption is based upon a statement made by counsel for defendants at the hearing.

The fallacy of Crivellaro's contention is evident, for whether United is regarded as a producer or handler, section 401 requires licensing when title passes "from producers or *others*" and is not limited to purchases from producers alone. It should be noted further that section 103, above quoted, also provides that it matters not whether such cooperative is organized under the laws of this Commonwealth or any other state. (Italics supplied.)

Causing more difficulty is interpreting the meaning of the bond requirement provision of the Milk Control Law. Section 501 provides as follows:

"It shall be unlawful for a milk dealer or handler to purchase, acquire or receive on consignment or otherwise milk from producers unless the milk dealer or handler shall file with the board a corporate surety, individual surety or collateral bond, supported by United States or Pennsylvania securities, approved by the board."

If United is a producer, a bond must be filed by Crivellaro. But, as may be observed, under section 103 of the Milk Control Law there is some ambiguity as to when a cooperative is a dealer-handler and when it is a producer. The board argues that a cooperative under the legislation is basically a producer and, in actual fact, is a group of producers acting in concert so as to find markets and to facilitate distribution of milk for its members. The exception to the general definition, i.e., a cooperative selling to dealers-handlers "shall be deemed to be a milk dealer or handler as to that part of its business and shall be governed by the provisions of this act applicable thereto," logically recognizes that a cooperative affects the resale price structure and accordingly becomes subject to licensing under section 401 of the law. Removing cooperatives from producer status for this limited purpose could not change the producers' status generally and permit a party such as Crivellaro to escape from the bonding re-

quirement of the law. A reading of the preamble to the law shows the legislature intended security to be given producers. See paragraph 4 of the preamble set forth in the historical note at 31 PS §700j-101. Under section 512 of the law, 31 PS §700j-512, it is provided that a cooperative "shall be deemed a producer" and "shall not be required to file a bond under the provisions of this article." If Crivellaro need not file a bond because the cooperative is classified a dealer-handler as to part of its operation, the producers who furnish Crivellaro would be unprotected, a distortion of express legislative intent.

It can, therefore, be concluded that United supplies milk to Crivellaro in its capacity as a producer and Crivellaro is, in fact, buying milk from producers and is dealing in and handling such milk by manufacturing and processing it into cheese within the Commonwealth of Pennsylvania, and its continued failure to obtain a license and bond as required by the Milk Marketing Law constitutes violations of the law.

In accordance with this adjudication, we enter the following:

## DECREE NISI

And now, January 14, 1970, defendants, Charles Sr., Anthony, Salvatore and Louisa Crivellaro, trading as Crivellaro and Sons, are permanently restrained and prohibited from buying milk from producers without having first been licensed by the Milk Marketing Board of the Commonwealth of Pennsylvania to do so and without having filed with the said board an acceptable bond in a lawful amount as required by statute.

The prothonotary is directed to enter this decree nisi and notify the parties to this proceeding or their counsel forthwith. If no exceptions are filed within 20 days of the entry of this decree, a final decree will be entered.